## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MICHELE KNIGHT,

    **Plaintiff,**

 **v.**                                                      **CASE NO:**

PENSKE TRUCK LEASING CO. LP,

    **Defendant.**

_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MICHELE KNIGHT, (hereinafter "Plaintiff" or "Ms. Knight"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, PENSKE TRUCK LEASING CO. LP (hereinafter "Defendant," "Penske," or "Company") and alleges:

### INTRODUCTION

1.     The Plaintiff brings this action against Defendant, her former employer, seeking to recover damages for unlawful discrimination based on disability and retaliation in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq., and the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA").

2.     As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her, altered the terms, conditions, and privileges of her employment because of her disability, and retaliated against her in violation of her rights under the ADA and the FCRA.

3.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer loss of income, benefits, pension and retirement contributions, future earning capacity, career opportunities, professional reputation, health-insurance coverage, and other pecuniary losses. She has also suffered emotional distress, mental anguish, embarrassment, humiliation, anxiety, panic attacks, and sleep disruption.

4.     Plaintiff has incurred costs and attorney's fees in bringing this matter.

## **JURISDICTION AND VENUE**

5.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and the principles of pendent jurisdiction.

6.     This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant

to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

**PARTIES**

8. Plaintiff is MICHELE KNIGHT, a 54-year-old female who will turn 55 in October 2026 and who has been diagnosed with anxiety, a condition that substantially limits one or more major life activities. Plaintiff resides in Largo, Florida.

9. Plaintiff is a member of a class protected against discrimination and retaliation based on her disability under the ADA and the FCRA.

10. During the period from August 15, 2022, until February 3, 2025, Defendant employed Plaintiff as an Executive Assistant.

11. At all times material herein, Plaintiff met the definitions of

"employee" and "eligible employee" under all applicable federal and state statutes.

12. At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADA and the FCRA.

13. The Defendant, PENSKE TRUCK LEASING CO. LP, is a company that provides truck leasing, contract maintenance, and fleet management services, and employed Plaintiff at its Tampa IT Development Center located at 5401 W. Kennedy Blvd, Ste. 650, Tampa, FL 33609, Hillsborough County, Florida.

14. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Hillsborough County, Florida, and employed more than 1,000 employees, including more than 15 employees within 75 miles of Plaintiff's worksite.

15. At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, the ADA and the FCRA.

16. Accordingly, Defendant is liable under the ADA and the FCRA for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17.    Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18.    On February 19, 2025, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, disability discrimination and retaliation. Said Charge of Discrimination bears EEOC Charge Number 511-2025-01880.

19.    On July 27, 2026, Plaintiff requested that the EEOC issue a Notice of Right to Sue in reference to her Charge of Discrimination against Defendant.

20.    More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring her FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

21.    All conditions precedent to bringing this action have been

performed or have occurred.

## GENERAL ALLEGATIONS

22.     Plaintiff suffers from anxiety, a medical condition that substantially limits one or more major life activities, including sleeping, concentrating, and thinking. Plaintiff has been prescribed medication, including Xanax and, more recently, Triazolam, to manage her condition.

23.     On August 15, 2022, Plaintiff began her employment with Defendant as an Executive Assistant at Defendant's Tampa IT Development Center, reporting directly to Paul Maglionico, Vice President of e-Business.

24.     Plaintiff was initially paid $30.00 per hour, and her salary increased to $32.39 per hour ($67,371.20 annually) by the time of her termination.

25.     Throughout her employment, Plaintiff performed her job duties satisfactorily and was actively engaged in company initiatives, including serving as chair of the cultural committee and volunteering on the Diwali committee.

26.     In February 2024, Plaintiff reported Yvette Urso's inappropriate workplace conduct to Human Resources representative Barbara Schleicher, including conduct that made Plaintiff uncomfortable at work.

27. During the February 2024 meeting, Plaintiff disclosed her anxiety. Schleicher failed to document Plaintiff's complaint about Urso.

28. By no later than April 2024, Maglionico and Human Resources knew that Plaintiff suffered from anxiety. Plaintiff disclosed her anxiety to Maglionico on numerous occasions thereafter.

29. In April 2024, Plaintiff privately reported suspected drug use in the workplace after smelling marijuana on coworker Carson Winchester's jacket. Plaintiff reported her concern to manager Michael Waites.

30. Gabriella Swann, Urso's mentee, overheard part of the incident, treated Plaintiff rudely, and reported Plaintiff to Human Resources before Plaintiff could complete her report concerning Winchester.

31. Defendant then subjected Plaintiff to a prolonged, approximately three-week investigation, notwithstanding management's knowledge of her anxiety, and issued a written warning that was not a final warning. Plaintiff completed all required corrective actions.

32. The April 2024 incident marked the beginning of escalating hostility and scrutiny. Harassment by Urso intensified after Plaintiff disclosed her anxiety and reported the suspected drug use.

33. Throughout 2024, Urso yelled at Plaintiff's desk, slammed

doors, verbally confronted Plaintiff, and made false accusations, including accusations concerning office signage and seating assignments over which Plaintiff lacked authority.

34. Urso repeatedly stated that she was close friends with Maglionico and his wife, Linda. Plaintiff reported Urso's conduct to Maglionico multiple times, but management failed to intervene.

35. In July 2024, coworker Jeff Long made an unwelcome sexual remark to Plaintiff by describing a 'lucid dream' involving himself and Plaintiff in the Mother's Room. Plaintiff became uncomfortable and thereafter avoided being alone with Long.

36. Plaintiff did not immediately report Long's July 2024 remark because she feared retaliation based on Defendant's response to her earlier complaints.

37. In September 2024, Defendant gave Plaintiff a positive performance review and a 2.7% merit increase, although Maglionico continued to rely on the completed April 2024 corrective action as negative documentation.

38. In September and October 2024, Plaintiff repeatedly informed Maglionico that her anxiety had worsened after Hurricane Helene caused

her to lose her home of approximately ten years and left her displaced while she searched for new housing.

39.    Defendant knew of Plaintiff's displacement, worsening anxiety, and housing instability. Defendant provided $1,000 in disaster assistance to employees affected by Hurricane Helene.

40.    Despite losing her home and experiencing worsening anxiety, Plaintiff continued to perform her job duties, worked through Hurricane Milton, searched for and moved into new housing, and used only one PTO day in connection with her move on or about November 9, 2024.

41.    During a badge-system outage, contractor Emile Harding accused Plaintiff of racism and of blocking his access to the office suite.

42.    Plaintiff informed Harding and his manager that the badge system was down, and Harding's manager accepted Plaintiff's explanation.

43.    Nevertheless, Human Resources treated hearsay originating with Harding and relayed through another person as a formal complaint, interviewed or relied upon Harding despite his contractor status, and escalated its scrutiny of Plaintiff.

44.    Defendant failed to apply comparable scrutiny to Plaintiff's reports about Urso, Long, Swann, Winchester, and other coworkers.

45.     On January 14, 2025, Human Resources interviewed Plaintiff about accusations against her. During the interview, Plaintiff again disclosed that she suffered from anxiety and took Xanax.

46.     Schleicher asserted that Plaintiff had said that 'people who take Xanax are crazy.' Plaintiff immediately denied making that statement, explained that she herself took Xanax, and objected to the false and disability-related characterization.

47.     Rather than fairly address Plaintiff's explanation and disability-related concern, Defendant prolonged its investigation, subjected Plaintiff to heightened scrutiny, and treated her with increasing hostility.

48.     In late January 2025, Long stood at Plaintiff's desk as two Indian coworkers walked by and made the racially derogatory remark, 'Don't they take baths in their culture?'

49.     Plaintiff reported Long's discriminatory remark to Maglionico on or about January 24, 2025, and provided a written or final report on or about January 31, 2025, after Maglionico instructed her to write it up.

50.     Defendant did not conduct a meaningful investigation into Long's discriminatory conduct before terminating Plaintiff.

51.     Long remained employed after Plaintiff's termination and,

according to information available to Plaintiff, was not terminated until approximately four months after Plaintiff's termination and approximately one month after Plaintiff filed her administrative Charge.

52.    On January 30, 2025, coworker Raul Polanco approached Plaintiff, prayed with her, and told her, 'Good luck in your next job,' indicating that others knew of Defendant's termination decision before Plaintiff was informed.

53.    On February 3, 2025, at approximately 12:04 p.m., Insight Global posted Plaintiff's position at a rate approximately $10 per hour less than Plaintiff's pay, approximately four hours before Defendant terminated her.

54.    Defendant replaced Plaintiff with a person approximately thirty years younger who, on information and belief, was hired at approximately half Plaintiff's salary.

55.    The advance posting, substantially lower compensation, and materially younger replacement support the inference that Defendant had predetermined Plaintiff's termination and that its later explanation was pretextual, including as part of a cost-cutting or pension-avoidance motive.

56.    On February 3, 2025, at approximately 4:00 p.m., Defendant

terminated Plaintiff during a Microsoft Teams meeting attended by Maglionico and Schleicher.

57.    Maglionico stated that Plaintiff was being terminated for unprofessionalism, lack of self-awareness, or a 'pattern of unprofessional behavior,' but Defendant provided no specific examples, supporting documentation, or meaningful opportunity for Plaintiff to respond. Maglionico told Plaintiff, 'It's done.'

58.    Defendant had not subjected Plaintiff to progressive discipline for the stated conduct, and Plaintiff's positive September 2024 review, merit increase, and recent recognition were inconsistent with Defendant's vague termination explanation.

59.    Before terminating Plaintiff, Defendant had cleared her of the accusation that she was racist, and Harding's manager had accepted Plaintiff's explanation concerning the badge outage.

60.    Defendant nevertheless relied on hearsay and Harding's complaint while disregarding the validating explanation of his manager and Plaintiff's disclosed disability and objections to disability-related assumptions.

61.    Defendant did not fairly investigate Urso's false accusations

and hostility, Long's racial and sexual remarks, Swann's interference, Winchester's conduct, Polanco's advance knowledge, or the circumstances by which Harding's statements reached Human Resources.

62. Defendant's shifting or vague explanations, selective investigations, departure from progressive discipline, advance job posting, substantially younger and lower-paid replacement, and close timing following Plaintiff's complaints and renewed disability disclosure demonstrate pretext.

63. Plaintiff's termination occurred after Defendant had known of her disability since at least February or April 2024, less than three weeks after her January 14, 2025 disability-related objection and renewed disclosure, days after her report of Long's discriminatory remark, and shortly before her pension would have vested on August 14, 2025.

64. Following the termination, Maglionico directed employees not to communicate with Plaintiff and represented that communicating with her would be an 'HR issue.'

65. Defendant denied Plaintiff access to her personal belongings for approximately two weeks. When the belongings were returned, items had been thrown loosely into a box, some wrapped only in thin newspaper, and

numerous items were damaged.

66.    The delay, denial of access, and damage to Plaintiff's property caused additional emotional distress and were part of the continuing adverse treatment following her complaints and termination.

67.    Defendant terminated Plaintiff's health-insurance coverage effective February 28, 2025, leaving her medically vulnerable and causing or contributing to out-of-pocket medical expenses.

68.    Defendant provided no severance. It also demanded repayment of approximately $600 in PTO previously approved by Maglionico and threatened collection activity, contributing to Plaintiff's financial and credit instability.

69.    As a result of the termination, Plaintiff lost the opportunity to vest in her pension on August 14, 2025, lost employer retirement contributions and access to her 401(k) within approximately three months, and lost health and other employment benefits.

70.    Plaintiff has remained unemployed or underemployed, lost future earning capacity, career trajectory, and promotional opportunities, and suffered harm to her professional reputation.

71.    Plaintiff has experienced worsening anxiety, panic attacks,

sleep disruption, medication changes, emotional distress, and mental anguish. Her loss of income and benefits has exacerbated her housing instability and placed her at risk of homelessness.

72.    Plaintiff has also suffered property damage, out-of-pocket medical expenses, financial and credit instability, and other pecuniary and non-pecuniary losses.

73.    At all times relevant herein, Plaintiff was a qualified individual with a disability who could perform the essential functions of her position, with or without reasonable accommodation.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### Disability Discrimination
### 42 U.S.C. §§ 12101-12213

74.    Plaintiff realleges and incorporates by reference paragraphs 1 through 73 as though fully set forth herein.

75.    At all times material herein, Defendant was an employer within the meaning of the ADA.

76.    Plaintiff was a qualified individual with a disability within the meaning of the ADA because her anxiety substantially limited one or more major life activities and she could perform the essential functions of her

position, with or without reasonable accommodation.

77.    Defendant knew of Plaintiff's disability no later than February or April 2024 through her disclosures to Human Resources and management, and Defendant received repeated disclosures thereafter, including in September and October 2024 and on January 14, 2025.

78.    After learning of Plaintiff's disability, Defendant subjected her to adverse actions, including selective and prolonged investigations, heightened scrutiny, increasingly hostile treatment, and termination.

79.    Defendant took the foregoing actions because of Plaintiff's disability.

80.    Defendant's stated reasons were false and pretextual for the reasons alleged above.

81.    Defendant's conduct constituted unlawful disability discrimination in violation of the ADA.

82.    As a direct and proximate result, Plaintiff suffered lost wages, benefits, pension and retirement contributions, earning capacity, career opportunities, medical expenses, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE,** Plaintiff, MICHELE KNIGHT, demands trial by jury

on all issues so triable as of right, and respectfully requests judgment against

Defendant, PENSKE TRUCK LEASING CO. LP, and the following relief:

A.    A declaration that Defendant violated the ADA by discriminating against Plaintiff because of her disability;

B.    Back pay, front pay, lost pension and retirement contributions, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;

C.    Compensatory damages as allowed by law;

D.    Pre-judgment and post-judgment interest as allowed by law;

E.    Reasonable attorneys' fees, costs, and expenses as allowed by law; and

F.    Such other and further relief as the Court deems just and proper.

<u>**COUNT II**</u>
<u>**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**</u>
**Retaliation**
**42 U.S.C. §§ 12101-12213**

83.    Plaintiff realleges and incorporates by reference paragraphs 1 through 73 as though fully set forth herein..

84.    At all times material herein, Defendant was an employer within the meaning of the ADA.

85. Plaintiff engaged in activity protected by the ADA when she objected to the false, disability-related characterization attributed to her during the January 14, 2025 Human Resources interview and asserted her rights concerning Defendant's treatment of her disclosed anxiety.

86. Defendant knew of Plaintiff's protected activity.

87. After Plaintiff engaged in protected activity, Defendant subjected her to materially adverse actions, including heightened scrutiny, continuation of a selective investigation, increasingly hostile treatment, termination, and adverse post-termination treatment.

88. These actions would dissuade a reasonable employee from asserting rights protected by the ADA.

89. The close temporal proximity, advance replacement posting, selective investigations, procedural irregularities, and pretextual reasons alleged above support a causal connection and retaliatory intent.

90. Defendant's conduct constituted unlawful retaliation in violation of the ADA.

91. As a direct and proximate result, Plaintiff suffered lost wages, benefits, pension and retirement contributions, earning capacity, career opportunities, medical expenses, emotional distress, mental anguish,

humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE,** Plaintiff, MICHELE KNIGHT, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, PENSKE TRUCK LEASING CO. LP, and the following relief:

A.   A declaration that Defendant violated the ADA by retaliating against Plaintiff for engaging in protected activity;

B.   Back pay, front pay, lost pension and retirement contributions, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;

C.   Compensatory damages as allowed by law;

D.   Pre-judgment and post-judgment interest as allowed by law;

E.   Reasonable attorneys' fees, costs, and expenses as allowed by law; and

F.   Such other and further relief as the Court deems just and proper.

### COUNT III
### VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
**Disability Discrimination**
**Florida Statutes §§ 760.01-760.11**

92.   Plaintiff realleges and incorporates by reference paragraphs 1 through 73 as though fully set forth herein..

93.    At all times material herein, Defendant was an employer within the meaning of the FCRA.

94.    Plaintiff was a qualified individual with a disability or handicap within the meaning of the FCRA because her anxiety substantially limited one or more major life activities and she could perform the essential functions of her position, with or without reasonable accommodation.

95.    Defendant knew of Plaintiff's disability no later than February or April 2024 through her disclosures to Human Resources and management, and Defendant received repeated disclosures thereafter, including in September and October 2024 and on January 14, 2025.

96.    After learning of Plaintiff's disability, Defendant subjected her to adverse actions, including selective and prolonged investigations, heightened scrutiny, increasingly hostile treatment, and termination.

97.    Defendant took the foregoing actions because of Plaintiff's disability.

98.    Defendant's stated reasons were false and pretextual for the reasons alleged above.

99.    Defendant's conduct constituted unlawful disability discrimination in violation of the FCRA.

100.    As a direct and proximate result, Plaintiff suffered lost wages, benefits, pension and retirement contributions, earning capacity, career opportunities, medical expenses, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE,** Plaintiff, MICHELE KNIGHT, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, PENSKE TRUCK LEASING CO. LP, and the following relief:

A.   A declaration that Defendant violated the FCRA by discriminating against Plaintiff because of her disability;

B.   Back pay, front pay, lost pension and retirement contributions, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;

C.   Compensatory damages as allowed by law and within any applicable statutory limits;

D.   Pre-judgment and post-judgment interest as allowed by law;

E.   Reasonable attorneys' fees, costs, and expenses as allowed by law; and

F.   Such other and further relief as the Court deems just and proper.

## COUNT IV
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
### Retaliation
### Florida Statutes §§ 760.01-760.11

101.    Plaintiff realleges and incorporates by reference paragraphs 1 through 73 as though fully set forth herein..

102.    At all times material herein, Defendant was an employer within the meaning of the FCRA.

103.    Plaintiff engaged in activity protected by the FCRA when she opposed discriminatory conduct, including by objecting to the false disability-related characterization during the January 14, 2025 Human Resources interview and by reporting Long's racially discriminatory remark on or about January 24 and January 31, 2025.

104.    Defendant knew of Plaintiff's protected activity.

105.    After Plaintiff engaged in protected activity, Defendant subjected her to materially adverse actions, including heightened scrutiny, continuation of a selective investigation, increasingly hostile treatment, termination, and adverse post-termination treatment.

106.    These actions would dissuade a reasonable employee from opposing conduct prohibited by the FCRA.

107. The close temporal proximity, advance replacement posting, selective investigations, procedural irregularities, and pretextual reasons alleged above support a causal connection and retaliatory intent.

108. Defendant's conduct constituted unlawful retaliation in violation of the FCRA.

109. As a direct and proximate result, Plaintiff suffered lost wages, benefits, pension and retirement contributions, earning capacity, career opportunities, medical expenses, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE,** Plaintiff, MICHELE KNIGHT, demands trial by jury on all issues so triable as of right, and respectfully requests judgment against Defendant, PENSKE TRUCK LEASING CO. LP, and the following relief:

A. A declaration that Defendant violated the FCRA by retaliating against Plaintiff for engaging in protected activity;

B. Back pay, front pay, lost pension and retirement contributions, lost benefits, and other equitable and monetary relief sufficient to make Plaintiff whole;

C. Compensatory damages as allowed by law and within any applicable statutory limits;

D.      Pre-judgment and post-judgment interest as allowed by law;

E.      Reasonable attorneys' fees, costs, and expenses as allowed by law; and

F.      Such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 29th day of July 2026.

> */s/ Jason W. Imler, Esq.*
> Jason W. Imler
> Florida Bar No. 1004422
> Alberto "Tito" Gonzalez
> Florida Bar No. 1037033
> **Imler Law**
> 23110 State Road 54, Unit 407
> Lutz, Florida 33549
> (P): 813-553-7709
> Jason@ImlerLaw.com
> Tito@ImlerLaw.com
> Ashley@ImlerLaw.com
> Tiffany@ImlerLaw.com